THE COMMISSIONERS OF PARKS AND BOULEVARDS OF THE
CITY OF DETROIT v. PETER RUSH, COMPTROLLER
OF THE CITY OF DETROIT.

*Municipal corporations—Detroit city charter—Park and boulevard
bonds—Approval of board of estimates.*

The issuance of bonds by the common council of the city of
Detroit to raise money to pay for lands purchased or condemned
by the commissioners of parks and boulevards under section 15
of Act No. 388, Local Acts of 1889, need not be approved of
by the board of estimates of the city, established by Act No.
488, Local Acts of 1887.

*Mandamus.* Submitted November 18, 1890. Granted
December 24, 1890.

Relators applied for *mandamus* to compel respondent to
advertise for proposals for certain park and boulevard
bonds. The facts are stated in the opinion.

*John J. Speed,* for relators.

*Charles W. Casgrain,* for respondent.

CHAMPLIN, C. J. By Act No. 388, Local Acts of 1889,
the commissioners of parks and boulevards of Detroit
were created; the act providing that such commissioners
should be appointed by the mayor with the consent of
the common council of the city of Detroit. By section
15 of this act, the commissioners were authorized, with
the approval of the common council, to enter into con-
tracts for the purchase and conveyance to the city of
lands, or, with the consent of the common council,
they might acquire lands by the legal proceedings pro-
vided for in the act. In pursuance of this section, the

common council of the city of Detroit, on April 23, 1890, adopted the following resolution:

" *Resolved*, that the commissioners of parks and boulevards be and are hereby authorized to enter into contracts with the owners of lands lying within the route of the boulevard, for the purchase of the same, subject to the approval of the common council; and if said commissioners shall, in any cases, be unable to make favorable contract or contracts, then said commissioners be authorized to cause to be instituted the necessary proceedings to condemn the lands for right of way in such cases."

Being unable to make favorable contracts with certain parties, the commissioners took the necessary proceedings to acquire the lands by condemnation for the right of way of the boulevard, and obtained an award in favor of the improvement, and fixing the amount of damages, including the expenses, at $3,491. The verdict of the jury being confirmed, the commissioners reported their proceedings to the common council, and requested that funds be provided for the payment of the amount awarded and expenses. This communication was referred to a committee, who reported to the common council that the contingent fund was exhausted, and it was necessary to issue bonds, and accompanied their report with a resolution as follows:

" *Resolved*, that in order to raise the necessary funds to pay the amounts awarded by the jury in certain proceedings taken in the recorder's court to condemn certain lands of Fredericka Kuehle and Margaret Klein, together with the costs, the comptroller be, and he is hereby, directed to advertise for five days for proposals for $3,500 of park and boulevard bonds, the same to bear interest at four per cent., to be of $500 each, and payable in 20 years."

The resolution was adopted by the council, and the same was approved by the mayor. The city comptroller now refuses to advertise for proposals, claiming that, before the bonds can lawfully be issued, the consent of

the board of estimates of said city must be obtained. The commissioners applied to this Court for a *mandamus* to compel him to advertise, as required, and this Court granted an order upon him to show cause, to which he has made the following response:

"He admits that said relators have applied to him requesting him to advertise for proposals for the purchase of said bonds mentioned in the petition and order to show cause herein; but that respondent has refused to advertise, as requested, because said issue of bonds was not submitted to, or authorized by, the board of estimates of the city of Detroit, as required by law."

Section 15 of the act mentioned, after providing for conferring authority upon the commissioners, with the consent of the council, to contract for the purchase, or, failing in that, for the condemnation, of lands, continues as follows:

"And, upon such acquisitions being made, to cause the proper conveyances to be made and recorded; and the purchase price thereof, as well as for any compensation to be paid for any lands which may be taken or condemned by proceedings taken therefor, as hereinafter provided, may be paid from the contingent fund of said city, or may be raised, if the common council shall so determine, by the issue of bonds, to be known as 'park and boulevard bonds,' and which shall be signed, numbered, recorded, sold, and issued in like manner as Detroit sewer bonds are, by the city charter, required and authorized to be made and issued; and the moneys so paid or raised shall be exclusive of the amounts raised for maintenance and improvement, as hereinbefore provided."

The objection of the comptroller that the issue of these bonds was not authorized by the board of estimates is based upon an act of the Legislature passed in 1887 (Act No. 488, Local Acts of 1887), establishing the board of estimates, and, among other things, providing as follows:

Chapter 8, § 1. "Before any taxes shall be levied for the purposes or any of the funds into which the revenues and moneys of the city may be divided, the comptroller shall present to the common council, in writing, his estimates of the amount of taxes which, in his opinion, it may be necessary to raise for the ensuing year, for the purpose [purposes] of each of said funds; and also an estimate of the entire proposed expenditures for said year, whether the same is to be raised by tax, by loan, or by special assessment, which estimates shall be published in the official paper of the city. The comptroller shall, at the same time, give to the common council any information in his power or which they may request concerning the finances of said city. The common council may revise or alter said estimates, but not so as to exceed the aggregate taxes authorized by law to be levied, and, when such estimates shall be finally adopted by them, the same shall be transmitted by the clerk of said board to the board of estimates. The common council shall so alter, revise, and adopt said estimates on or before the fifth day of April in each year."

"SEC. 4. Before any moneys shall be raised, or taxes levied and collected, for the purposes of the several funds mentioned in the charter of the city of Detroit, and acts amendatory thereof, except interest and sinking funds for the purpose for which moneys are required to be raised by other acts relating to said city, which require estimates for taxes to be submitted by the city comptroller or other officers and boards, the estimates of the amount of moneys required for such funds or purposes by tax shall be submitted to said board of estimates, and, before any bonds shall be issued, said issue shall be authorized by said board of estimates. The estimates for the general city taxes shall be acted upon by the common council, as provided by law, and shall be submitted to said board of estimates in time to be considered by the board on or prior to said 5th day of April. Said board shall carefully consider all estimates hereby required by this act to be submitted to it of moneys to be raised as aforesaid, and shall approve or disapprove of the same. It may decrease the amount to be raised, but shall not increase the same. It may authorize the issuing of bonds in the same manner, and in the same cases, as such citizens' meetings might authorize the same. A majority of all the members elect of said board shall be required to approve of

any such estimates for the raising of taxes, or any part thereof, or to authorize the issue of any bonds.

"Sec. 5. All votes in said board, approving or disapproving of any estimate, or decreasing the amount thereof, or authorizing or disapproving of the issue of bonds, shall be taken by yeas and nays, and entered upon the record of its proceedings. After said board shall have considered the said matters required to be submitted to it, it shall cause a statement of the amounts, so approved by it, to be raised by taxation or issue of bonds, and the fund or purpose for which raised, to be made, which statement, being adopted by a majority of all the members elect of the board, shall be then certified by the president and secretary of the board, and shall be transmitted to the common council, and only so much of such estimates or amount to be raised by taxation as shall have been approved by the said board shall be raised and collected in said city; and only such bonds shall be issued as shall be authorized by said board, as herein provided. The common council of said city, upon approval of said estimates, or any part thereof, by said board, shall cause to be levied and collected by general tax the amount thereof so approved, and shall issue any bond so authorized to be issued by said board, as aforesaid."

It is insisted that, in virtue of these sections pertaining to the board of estimates, and by the language of the fifteenth section of Act No. 388, Local Acts of 1889, providing that the bonds shall be signed, numbered, recorded, sold, and issued in like manner as Detroit sewer bonds are, by the city charter, required and authorized to be made and issued, these bonds, authorized by the common council, must first be passed upon by the board of estimates before they can be issued.

The provisions of the statute pertaining to the board of estimates are a part of the charter of the city of Detroit; so, likewise, is Act No. 388 an act supplemental to the charter of the city of Detroit; and they must be construed together as one act, and the sole question is whether or not, in cases arising under section 15 of Act No. 388, the board of estimates must pass upon the issu-

ing of the bonds before the comptroller of the city can place them upon the market. It is implied in this position that it rests with the board of estimates to veto the action of the common council, and what has been done by the board of commissioners of parks and boulevards; and that, although they may have contracted for the purchase of lands under the authority conferred by section 15, yet they cannot perfect such purchase by payment of the contract price, and thus acquire the lands to the public use, without the consent first obtained of the board of estimates, for, if the consent of the board of estimates is required to the issue of the bonds, it is likewise required to the binding effect of a contract of purchase, since it must be paid from the tax levy.

It is claimed on the part of counsel for respondent that the universal custom since 1802, when the town of Detroit was incorporated, has been to submit every item of expenditure to a meeting of citizens for discussion and approval, and that that custom has been preserved through different bodies, who have taken the place of the citizens' meeting; that therefore it is the design of the statute still to require every item of expenditure to be passed upon by some authority which represents the citizens' meeting of the early days of the municipality. It is true that this check upon the expenditure of money has been preserved in the legislation concerning the city of Detroit. It is doubtless, however, competent for the Legislature to provide that certain expenditures may be made upon approval of the common council, and it is competent also for them to abolish entirely the board of estimates, which has come now to represent the citizens' meeting. And the question is whether, in construing this statute in connection with that which relates to the board of estimates, it was the intention to permit expenditures of this kind to become binding obligations on the city on

the approval thereof by the common council of the city, and without the approval of the board of estimates.

We do not think that the requirement that these bonds shall be signed, numbered, recorded, etc., in like manner as Detroit sewer bonds are required to be, makes it necessary that they shall, before being signed, numbered, and recorded, receive the approval of the board of estimates. It seems to us that the express direction given as to how they shall be signed, numbered, recorded, and issued, impliedly excludes the idea that they were to be first approved by the board of estimates. The object of this provision appears to be to require their date and number in the order of their issue, and the amounts, to be kept by the comptroller, in order that it may be known how much indebtedness there is outstanding against the city, for this purpose, so that provision may be made for its payment.

We must construe the several provisions of the charter of the city of Detroit so that they may be harmonious, if possible. The statute has vested in these commissioners of parks and boulevards certain discretionary powers, among which are to purchase or otherwise obtain land for the purpose of the boulevard, and, in case they cannot obtain the same by private negotiations, to apply to the proper court to condemn the same for the public use. When this step is taken, a jury must, under the statute, pass upon the necessity for taking the land for the public use, and determine and award the just damages and compensation to be made therefor. And the statute requires that such damages and compensation, after having been ascertained in the manner provided by the act, shall, within one year after the confirmation of the verdict of the jury, or after it is affirmed on appeal, be paid by the commissioners or tendered to the respective persons entitled to receive the same; and it further provides that,

upon such tender of compensation being made, the title of the property will vest in the city of Detroit for the public use. Now, if we should say that this compensation cannot be paid to these parties unless it shall first be passed upon and approved by the board of estimates, it would be placing it in the power of this board to defeat the verdict of the jury to the effect that the taking of the lands was a necessary public improvement, and also to defeat the purchase of lands for that purpose. Unless the board of estimates has this power, it would be a useless form to present the question to them whether they will approve of the issuing of the bonds or not; and, since it was the design of the statute that the lands should be purchased or condemned and paid for as provided in the act, we think it is not necessary that they should approve of these bonds before they are issued.

*Mandamus* must, therefore, be granted.

The other Justices concurred.