LEVI TILLOTSON v. THE CITY OF SAGINAW ET AL.

*Statutes—Repeal by implication—Municipal corporations— Authority to issue bonds.*

1. Where two acts of the Legislature cover the same subject, both must be given effect, if possible.

2. Repeals by implication are not favored, and will be allowed only when the inconsistency and repugnancy are plain and unavoidable; citing *Connors v. Iron Co.*, 54 Mich. 168.

3. Act No. 321, Local Acts of 1891, which authorizes the City of Saginaw to borrow $75,000 for bridge purposes, did not repeal the provision of the charter of said city (section 25, tit. 5, Act No. 455, Local Acts 1889) authorizing the common council to issue bonds to the amount of $125,000 for the construction of the bridges therein named, but was intended to continue in force said charter provision, and to authorize the issuance of bonds for $200,000.

4. It was entirely competent for the Legislature, in the act of 1891, to place any restrictions it chose upon the council in issuing the bonds authorized by the act, although such restrictions are not found in the provision of the charter authorizing the issuance of the first bonds.

Appeal from Saginaw. (Gage, J.) Argued December 2, 1892. Decided December 22, 1892.

Bill to restrain defendants from executing and negotiat-

ing certain bonds. Complainant appeals. Decree dismissing bill affirmed. The facts are stated in the opinion.

*Wood & Joslin,* for complainant.

*Charles S. Smith,* for defendants.

GRANT, J. The bill in this case was filed to restrain the defendants from executing and negotiating the bonds of said city to the amount of $200,000. The issue of $125,000 of these bonds was ordered by the council under section 25 of title 5 of the city charter, and $75,000 under Act No. 321, Local Acts of 1891. The provision of the charter, and the above-named enabling act, are given below in full. There is no dispute about the facts, which were agreed upon at the hearing in the court below. Decree was entered sustaining the action of the common council, and dismissing the bill. Complainant was a tax-payer, and his right to bring the suit is conceded.

The two cities of Saginaw and East Saginaw were consolidated under Act No. 455, Local Acts of 1889, which act constitutes the charter of the defendant city. The provision authorizing the city to issue bonds for the construction of certain bridges is as follows:

" SEC. 25. The common council is hereby authorized to issue the bonds of said city, to the amount of $125,000, . for the purpose of raising money, first, to construct a bridge across the Saginaw river and the Emerson bayou, east from Court street, and to procure the right of way therefor, and, after that, for the construction of a bridge across said river at such point in the First ward of the city as the common council may deem proper, and to pro- . cure the right of way therefor; and also for the construction of a bridge across said river east from Perry street, and to procure the right of way therefor. Said bonds to be in such amounts, and payable at such times and places, and with such rate of interest, as the common council

94 MICH,—16.

may determine. Such bonds shall be issued, and the proceeds thereof shall be used, for no other purpose."

The act of 1891 is as follows:

" An Act to authorize the city of Saginaw to borrow money to be used in procuring right of way for, and approaches to, and the building of, three bridges across the Saginaw river, for the city of Saginaw, in the county of Saginaw, and to issue bonds therefor.

" SECTION 1. *The People of the State of Michigan enact,* That the common council of the city of Saginaw be, and it is hereby, authorized and empowered to borrow, on the faith and credit of said city, the sum of not exceeding $75,000, for a period not exceeding twenty years, at a rate of interest not exceeding five per cent. per annum, and to make, execute, negotiate, issue, and sell the bonds of said city therefor, with proper interest coupons attached thereto, in such manner as said common council shall determine, which said bonds in no case shall be sold for less than their par value.

"SEC. 2. Said bonds shall be denominated ' Bridge Bonds,' and the proceeds thereof shall be used in defraying the expense of procuring the right of way for, and approaches to, and the building of, three bridges across the Saginaw river, for the city of Saginaw, in Saginaw county, which said bridges, if built, shall be located as follows: One from a convenient place in the village of Carrollton to the opposite shore; one at the foot of Court steet, in said city; and one at or soùth of the foot of Wayne street, in said city —and for no other purposes; but no contract shall be let, or money expended, for the building of said Wayne-street bridge, until the contract shall be let for the building of the first two named, and work begun thereunder.

" SEC. 3. Said improvement shall be made, and money expended therefor, by the board of public works of said city, under the direction of the common council." Local Acts of 1891, p. 839.

The following facts are admitted:

" That at a meeting of said common council held March 28, 1892, the following resolutions were adopted:

" 'Resolved, by the common council of the city of Saginaw, Mich., that there shall be raised the sum $125,000 for the

purpose of constructing a bridge across Saginaw river and Emerson bayou, on a line of Court street, in said city, extending easterly to the street authorized on November 2, 1891, by said common council, to be opened across lots 42 and 43 of James Riley reserve, in said city; also a bridge across said river on the line of Maple street, in the village of Carrollton, extending eastward into the First ward of said city of Saginaw; and also a bridge across said river east from Perry street, in said city,—and to procure the right of way for said bridges.'

" 'Resolved, by the common council of the city of Saginaw, Mich., that there shall be borrowed, on the faith and credit of said city, the sum of $75,000, to be used in defraying the expense of procuring the right of way for, approaches to, and the building of, three bridges across Saginaw river, for said city, as provided by Act 321 of the laws of the State of Michigan, approved May 8, 1891, to wit: A bridge across Saginaw river and Emerson bayou, on a line of Court street, in said city, extended easterly to the street authorized on November 2, 1891, by said common council, to be opened across lots 42 and 43 of James Riley reserve, in said city; also a bridge across said river on the line of Maple street, in the village of Carrollton, extended eastward into the First ward of said city of Saginaw; and also a bridge across said river on a line running west, at right angles to River street, from the intersection of Center and Douglass streets, in said city of Saginaw,—each of said bridges to conform to the general description thereof as authorized by the board of supervisors of Saginaw county in October, 1891.'

" That at a meeting of said common council held September 8, 1890, the committee on bridges reported, among other things, as follows: 'In our opinion, the estimates for the bridges will largely overrun the appropriation,—$125,-000,—in which case application will have to be made to the Legislature at their next session.'

" That at a meeting of said council held February 18, 1891, on motion of Alderman Higgins, the city attorney was instructed to draft, and caused to be introduced, an act to enable the city to issue and sell bonds to the amount of $200,000 to defray the expense of constructing bridges; that the city engineer furnished the common council, early in the winter of 1890-91, with surveys, maps, and approximate estimates for the work of erecting the three bridges, and securing approaches thereto, from which report it

appears that the expense of said three bridges would largely exceed $125,000, and would, in fact, approximate $200,000.

"That an 'enabling act,' so called, was introduced in the last Legislature, and was so drafted as to read for $200,000, for the purpose of erecting the bridges, but was afterwards cut down to $75,000, upon the ground that, if not so changed, it would enable the city to expend $325,-000 for the three bridges, instead of the desired sum of $200,000, as the city already had the right, by its ·charter, to raise $125,000.

"That at a meeting of the common council held April 27, 1891, the following resolution was adopted:

"'*Resolved,* that the Legislature be requested to so amend the pending bridge enabling act that, instead of its being compulsory to locate a bridge at Perry street, it may be located at any place south of Wayne street, the exact location to be determined . hereafter by the common council, and that the city clerk forward a certified copy hereof to Hon. Rowland Connor.'

"That Perry street is the next street south of Wayne street, and Center street, where it strikes the river, is one block south of Perry street prolonged in a direct line across the river; that the said common council have at no time expressed an intention of locating a bridge at Perry street since the adoption of the resolution last above set forth, and have procured no authority from the board of supervisors to locate one at that point, but have procured authority from the board of supervisors to locate one at the foot of Center street; that the object of referring to Perry street in the resolution authorizing the issue of the bonds in the sum of $125,000 was to make the resolution, as a basis for the issue of the bonds, conform to the charter provision."

The complainant's counsel contend:

1. That the act of 1891 repeals, by implication, section 25 of title 5 of the charter.

2. That the resolutions of the common council based upon these statutes are inconsistent with each other, and hence inoperative.

There is no dispute as to the rule of interpretation where two acts cover the same subject. Both acts must be given effect, if possible. Repeals by implication are

not favored, and will be allowed only when the inconsistency and repugnancy are plain and unavoidable. The rule is well stated, and the authorities cited, in *Connors v. Iron Co.*, 54 Mich. 168; Mr. Justice CHAMPLIN speaking for the Court.

One allegation in the complainant's bill is, in this connection, of considerable significance. It reads as follows:

" The amount authorized to be raised for these three bridges, in the act of 1891, is notoriously inadequate for that purpose; and, should the bonds be issued, the money would remain in the city treasury until further authority can be obtained from the Legislature to increase the amount to an adequate sum."

This allegation is, of course, made upon the assumption that this act repeals the charter provision, leaving the common council authority to raise only the sum of $75,000. This was purely a local act; and, if the amount thereby authorized to be raised was notoriously inadequate, it is a reasonable presumption that the Legislature was cognizant of the fact, and the reasonable inference follows that it would not have passed the act if it had intended the repeal of the former provision. The resolutions of the council in regard to the matter were evidently intended as the basis for legislative action, and we must infer that they were placed before the Legislature, as it was the evident intention they should be.

But we think the agreed facts remove all doubt upon the question. It is conceded that the bill as introduced provided for issuing bonds to the amount of $200,000, and that the Legislature amended the bill by reducing the amount to $75,000, and that this was done for the reason that, if such amendment were not made, the city might raise $325,000, as it already possessed the right, under its charter, to raise $125,000. This action on the part of the

Legislature can lead to but one conclusion, viz., that it intended to continue in force the charter provision, and to authorize the issue of bonds for $200,000. The act of 1891 must therefore be held to be cumulative, or auxiliary to the charter.

The fact that the act of 1891 changes the location of one of the bridges, that it limits the time for the payment of the bonds to 20 years from the date of issue, that it restricts the rate of interest to 5 per cent., that it makes the board of public works the agency to expend the money, that it forbids the sale of the bonds at less than their par value, while the provisions of the charter differ in these respects in regard to the bonds there authorized, has no tendency to show a repugnancy between the two acts. While section 25 of the charter is silent as to under whose supervision the work is to be done and the money expended, still, under another provision of the charter itself, the supervision and charge of all public improvements are vested in the board of public works. It was entirely competent for the Legislature, in the act of 1891, to place any restrictions it chose upon the council in issuing the bonds authorized by the act, although such restrictions are not found in the charter authorizing the issue of the first bonds.

We do not think the resolutions of the council are inconsistent or inoperative. The only difficulty appears to have arisen from the desire on the part of the council to follow the language of the charter and of the act. The intention is apparent not to build a bridge east from Perry street, as the charter provides, but to construct it in accordance with the change authorized by the act of 1891. The city, therefore, appears to be acting in good faith, and to be complying both with the letter and spirit of its charter and the enabling act. In such case a technical construc-

tion should not be placed upon its acts, which will delay the progress of the city and the making of necessary improvements.

The decree is affirmed, with costs.

The other Justices concurred.