CAMPAU v. HIGHWAY COMMISSIONER OF GROSSE POINTE.

CAMPAU v. TOWNSHIP BOARD OF GROSSE POINTE.

1. CONSTITUTIONAL LAW—HIGHWAY COMMISSIONERS—STATUTES.
    Act No. 303, Local Acts 1901, is not unconstitutional in abridging the functions of the highway commissioner of Grosse Pointe, a constitutional officer, as the amendment of 1899 (Const. art. 4, § 49) authorizes the legislature to modify, change, or abolish the powers and duties of the township highway commissioner.

2. MUNICIPAL CORPORATIONS—PAVING—CHANGE OF GRADE.
    Under Act No. 303, Local Acts 1901, providing that, before paving a street, the town board shall declare the paving to be expedient, cause plans, specifications, and estimates of the cost to be made, submit to the electors the question of issuing bonds to defray the cost, and, with the highway commissioner, determine the details of the contract, the town board and highway commissioner may in good faith, after the election, issuing the bonds, and making the contract, change the grade of the street pavement.

Error to Wayne; Hosmer, Frazer, and Rohnert, JJ. Submitted February 25, 1903.    (Docket No. 208.)    Decided March 5, 1903.

*Certiorari* by Daniel J. Campau to review the action of the highway commissioner and township board of Grosse Pointe in changing the grade for the macadamizing of Jefferson avenue in said township. From a judgment for plaintiff, defendants bring error. Reversed.

Appeal from Wayne; Brooke, J. Submitted February 25, 1903. (Docket No. 127.) Decided March 5, 1903.

Bill by Daniel J. Campau and others to restrain the township board and highway commissioner of Grosse Pointe, and others, from changing the grade for the macadamizing of Mack avenue. From a decree dismissing the bill, complainants appeal. Affirmed.

*Thomas A. E. Weadock*, for plaintiff in *certiorari*.

*Orla B. Taylor*, for complainants.

*James H. Pound*, for defendants in both cases.

MONTGOMERY, J. In the first case above entitled, the plaintiff sued out a writ of *certiorari* to review the action of the township board of Grosse Pointe and the highway commissioner in changing the grade of Jefferson avenue at a certain point, and in authorizing the macadam pavement provided for as hereinafter stated to be laid upon the highway at the changed grade. The second case is a bill in equity, filed by complainants, owners of land abutting upon either side of Mack avenue, in said township of Grosse Pointe, in which an injunction is sought to restrain the township board and the highway commissioner from departing from the original plans and specifications obtained by the board and commissioner under circumstances hereinafter recited. The history of the two cases may be given in one statement.

By Act No. 303 of the Local Acts of 1901, the township of Grosse Pointe was authorized to grade, pave, plank, gravel, macadamize, curb, and otherwise improve the highways known as "Jefferson Avenue" and "Mack

Avenue," and to issue bonds for the purpose of defraying the expense thereof.   Section 2 of the act reads as follows:

"Whenever the township board of said township of Grosse Pointe shall, by resolution duly passed, declare that it is expedient to grade, pave, plank, gravel, macadamize, curb, or otherwise improve said Jefferson avenue and Mack avenue, or either of them, the said township board and the commissioner of highways of said township, acting together, shall cause to be made plans and specifications for the improvement of such highway in the manner declared to be expedient in the resolution aforesaid, and to cause estimates to be made of the cost of such improvement or improvements.   From such estimates said township board and highway commissioner, acting together, shall determine and fix the amount necessary to be raised for the purpose of such improvement or improvements, and the amount necessary to be raised by the issue and sale of bonds of said township for that purpose."

Section 3, so far as it is important, contains the following provisions:

"The township board shall then submit to the electors of said township at the annual township meeting, or at a special meeting to be called and ordered by the township board in the manner provided by law, the question of issuing bonds for the purpose of defraying the cost and expenses of the improvements declared by said township board to be expedient as aforesaid, to the amount determined by said township board and highway commissioner to be necessary therefor.   The notice of such township meeting shall contain a true copy of the resolution of said township board declaring the expediency of the proposed improvement, and the manner thereof, and the amount determined by said township board and highway commissioner to be necessary for such purpose."

Section 5 provides that, after the bonds shall have been sold, and the proceeds paid into the fund, the township board and highway commissioner shall advertise for bids for furnishing the material and doing the work of making the improvement declared to be expedient, "in accordance with the plans and specifications therefor as hereinbefore provided," and shall let the contract therefor to the lowest

responsible bidder.  The successful bidder is required to give bonds for the furnishing of the material necessary and the doing of said work in accordance with said plans and specifications, and subject to the approval of said township board and commissioner of highways.  The section further reads:

"The township, board and commissioner of highways shall have the right to determine the details of the contract with such lowest bidder in respect of the time within which the work is to be completed, the method and time of payment, and in all other respects not hereinbefore provided for."

It appears that, after this law was enacted, the township board duly passed a resolution declaring it to be expedient to macadamize both Jefferson avenue and Mack avenue. Plans and specifications were prepared, which showed, by careful attention to the details, a grade differing in Jefferson avenue quite materially, but in the case of Mack avenue only slightly, from the grade of the highway as it was at the time the work was undertaken.  This grade is only shown by a map or profile and by the use of a graduated scale, or a close examination of the figures showing the relation of the surface in the street, as proposed to be improved, to the datum line.  An estimate of the cost of the proposed improvement was made, and the question of bonding for the improvement was submitted to the people. The election was held under a notice which recited that the township board had, by resolution, declared it to be expedient to improve these streets; and also recited that plans and specifications had been drawn, and were on file with the clerk; that estimates had been made, showing the cost to be $165,000; and stating the form of the ballot, etc. Contracts were entered into, and the work entered upon.

The board and highway commissioner, acting together, thereafter determined that a change in the grade as shown by the profile on Mack avenue, making the general level from five to seven inches higher than as shown, was desirable, and a somewhat more substantial change in the grade

of Jefferson avenue was also determined to be desirable. The complainants in the chancery suit claim that such change as to Mack avenue damages their property by leaving it below the surface of the highway, requiring expensive filling. It is also claimed in the *certiorari* case that the change of grade of Jefferson avenue would prove injurious to the plaintiff's property.

One question is made in the *certiorari* case which is not presented by the chancery record, but which is important to both cases, viz., whether the law is unconstitutional. It is contended that it is, and for the reason that it withdraws from the highway commissioner his functions, and that, as he is a constitutional officer, this cannot be done. Without expressing any view as to the validity of this act under the Constitution as it stood prior to the amendment of 1899 (section 49, art. 4), we think that section is a sufficient and complete answer to the plaintiff's contention. It provides that the legislature may provide for the laying out, construction, improvement, and maintenance of highways, bridges, and culverts by counties and townships, and may authorize counties to take charge of any highways within their limits for such purposes, and may modify, change, or abolish the powers and duties of township commissioners and overseers of highways. Language could not well be more plain, and we think it cannot be said that this constitutional amendment was intended exclusively to provide for a county road system. This may have been the prime object, but it in terms confers upon the legislature authority to provide for the laying out and maintenance of highways by townships as well as counties, and gives the broadest power to modify or abolish the powers and duties of township commissioners and overseers of highways.

The meritorious question, which is common to both cases, is whether the authority of the township board and highway commissioner is limited to constructing the highway in precise accord with the terms of the preliminary specifications and plans. The argument is made that the

purpose of this act is to give the people the right to determine and pass upon the specifications, and that, having done so, the highway commissioner and township board become simply agents to carry into effect the expressed will of the people at the election.

It is to be noted that by section 2 the township board, in the first instance, is authorized to declare the improvement of the highway by paving, planking, graveling, macadamizing, etc., to be expedient. It is true that this is followed by a provision in the section that, after this is done, the board and highway commissioner shall cause plans and specifications to be made, and estimates of the cost of the improvement; and it is also provided that from these estimates they shall determine and fix the amount necessary to be raised for the purpose of the improvement. But by section 3 the board is required to submit to the electors the question of issuing bonds for the purpose of defraying the cost and expenses of the improvement *declared by the township board to be expedient as aforesaid,* to the amount determined by the township board and highway commissioner to be necessary therefor. A significant thing, also, is the notice which is required. This notice is required to contain a true copy of the resolution declaring the expediency of the proposed improvement, and the *manner thereof,* and the amount determined by said township board and highway commissioner to be necessary for such purpose. The resolution declaring the improvement and the *manner thereof,* it will be noted, preceded the joint action of the commissioner and township board, and therefore "the manner thereof," as here used, must relate to the manner as macadamizing, or graveling, or paving, rather than to the manner in detail as subsequently ascertained; for the resolution, preceding, as it does, such specifications and plans, cannot, in the nature of things, refer to them or include them. All that is further required is a statement of the amount determined to be necessary for this purpose. We think it clear, therefore, that it was not the intention that the

electors should pass upon the details of the plans and specifications, but that the question submitted to them should be the broad question of paving, macadamizing, etc., and the raising of a definite sum of money, ascertained or estimated in a manner prescribed by the statute. The question whether the hands of the board and commissioner were to be tied by these specifications and plans may be considered divorced from any thought that they are merely agents to register the will of the people in the matter of making a contract.

This does not avoid the whole difficulty, for it is provided by section 5 that the board and commissioner shall advertise for bids in accordance with the plans and specifications theretofore adopted. It is also provided that the bonds shall be to perform the work according to the plans and specifications, and subject to the approval of the township board and commissioner of highways. And it is provided that the board and commissioner "shall have the right to determine the details of the contract with such lowest bidder in respect of the time within which the work is to be completed, the method and time of payment, and in all other respects not hereinbefore provided for." The question is, May such changes as a change in the grade of the highway be made, so long as good faith is exercised, and so long as the officials keep within the limit of expenditure fixed by the people? We think this question should be answered in the affirmative. Any other construction of this statute would result in this: That any slight mistake or error in the original plans and specifications could not be corrected. An error once made is an error for all time. It is true it is urged that the board and commissioner, upon ascertaining that the plans and specifications were defective, might pause, and do nothing. The statute does not contemplate this. It is as imperative that they shall advertise for bids and proceed with the work as it is in any other part.

It was suggested by the circuit judges who wrote the opinion in the *certiorari* case that, if there is a real neces-

sity for a radical departure from the plan under consideration at the time of issuing bonds, there must be power in the people to accept and authorize such change, but that without their assent there is no authority to make a material alteration. But the act contains no provision for a second submission of the question, and, as we have pointed out, it is not in contemplation of the act that each individual voter should pass upon the details of the plans and specifications, with a graduated rule or otherwise. The act does not provide for submitting these plans and specifications to the voters. It is doubtful whether the plans. and specifications provided for by this statute related to the subject of grade at all. At all events, we are of the opinion that, under the authority of section 5, the board and commissioner, acting in good faith, may, in determining the details of the contract, provide that the highway shall conform to the grade which shall to them seem most practicable.

It follows from these views that the decree in the chancery case should be affirmed, and the judgment in the law case should be reversed, with costs in each instance to the prevailing party.

HOOKER, C. J., CARPENTER and GRANT, JJ., concurred. MOORE, J., did not sit.