TOWNSHIP OF GROSSE POINTE *v.* FINN.

1. MUNICIPAL BONDS—PAYMENT—CREDIT OF TOWNSHIP.
   Act No. 534, Local Acts 1903, by authorizing the township board of Grosse Pointe to issue and sell bonds and place the proceeds with the township treasurer, necessarily implies the right to pledge the credit of the township for their payment.

2. MUNICIPAL CORPORATIONS—LOCAL SELF-GOVERNMENT—BONDS— VOTE OF ELECTORS.
   The legislature has the power to confer upon a township board the right to issue and sell bonds for street paving without submitting the question to the electors.

Error to Wayne; Donovan, J.   Submitted October 7, 1903.   (Docket No. 247.)   Decided October 22, 1903.

*Assumpsit* by the township of Grosse Pointe against Matthew Finn for the breach of a contract to purchase certain bonds.   From an order overruling a demurrer to the declaration, defendant brings error.   Affirmed.

*Geer & Williams* and *H. R. Martin (Miller, Smith, Alexander & Paddock,* of counsel), for appellant.

*James H. Pound,* for appellee.

Moore, J. The legislature in 1903 passed an act which authorizes the township board of the township of Grosse Pointe to pave, gravel, or otherwise improve a certain portion of Jefferson avenue within the limits of the township. For the purpose of defraying the cost of the work, the township board was authorized to issue and sell the negotiable bonds of the township to an amount not to exceed $25,000, and to raise each year by assessment on the taxable property in the township a sum sufficient to pay the interest on the bonds, and in the same manner such further sum as it might deem proper to raise for the purpose of providing a sinking fund with which to pay the bonds at their maturity. Act No. 534, Local Acts 1903.

The declaration of the plaintiff alleges that the township board has by resolution authorized the issue of $25,000 of bonds; that it advertised the bonds for sale; that the defendant was the highest bidder; that the plaintiff and the defendant entered into a written contract, whereby the plaintiff agreed to sell, and the defendant to purchase, the bonds for a stated sum; that the bonds were tendered to the defendant, and that he refused to receive them and pay the purchase price; and that as the result the plaintiff has been damaged, etc. The defendant demurred to this declaration, alleging that the act of the legislature was unconstitutional for the reason that the act deprives the qualified electors of the township of their right to determine by vote, *first*, the improvements which shall be made by the township; *second*, the money which shall be borrowed by the township; *third*, the taxes to which they shall be subjected for the payment thereof; and therefore that said act conferred no authority upon the township board to make the contract for the sale of the bonds; also that the act does not expressly authorize the township board to pledge the faith and credit of the township for the payment of the bonds, and therefore that the board has no authority to thus pledge the faith and credit of the township. The circuit judge overruled the demurrer, and held the act was constitutional. The defendant has sued out a

writ of error to have the action of the circuit judge reviewed by this court.

Does the act give the board authority to pledge the credit of the township for the payment of the bonds? The authority conferred upon the board to issue the bonds and to sell them, and to have the proceeds thereof paid to the township treasurer; necessarily implies the right to pledge the credit of the township. 1 Dill. Mun. Corp. § 127, and note.

The second question, whether the act is an invasion of the right of local self-government, and hence unconstitutional, is more difficult. In support of the contention that it is such an invasion, we are cited to the cases of *People* v. *Hurlbut*, 24 Mich. 44 (9 Am. Rep. 103); *People, ex rel. Board of Park Com'rs,* v. *Detroit Common Council*, 28 Mich. 228 (15 Am. Rep. 202); *Township of Ada* v. *Kent Circuit Judge*, 114 Mich. 77 (72 N. W. 35); *Moreland* v. *Millen*, 126 Mich. 381 (85 N. W. 882); and others. These cases undoubtedly hold that, in relation to local affairs, the legislature may not withhold authority from the local authorities and confer it upon an outside agency. An examination of the cases will show they are very different from the one before us. In *Township of Ada* v. *Kent Circuit Judge* the legislature said that certain townships and the county of Kent should raise the sum of $10,000 to be used in the construction of a bridge, in violation of section 9, art. 10, of the Constitution, which requires a vote of the electors before so large a sum of money shall be raised by tax for such a purpose. In the other cases the legislature itself undertook to appoint officers who should administer local affairs, or to authorize the governor to do so, and it was held the State might not interfere and control by compulsory legislation the action of the local authorities in matters exclusively of local concern. In the case at bar the act imposes the discretion to raise and expend the money upon a local board, chosen by the electors of the district in which the money is to be raised and expended.

In *Commissioners of Parks & Boulevards of Detroit* v. *Rush*, 84 Mich. 154 (47 N. W. 676), the commissioners of parks were authorized by the legislature to acquire lands for purposes named in the act, subject to the approval of the common council. The controller refused to sell the bonds because their issuance was not approved by the board of estimates. In the opinion written by CHAMPLIN, C. J., among other things it was said:

"It is claimed on the part of counsel for respondent that the universal custom since 1802, when the town of Detroit was incorporated, has been to submit every item of expenditure to a meeting of citizens for discussion and approval, and that that custom has been preserved through different bodies, who have taken the place of the citizens' meeting; that therefore it is the design of the statute still to require every item of expenditure to be passed upon by some authority which represents the citizens' meeting of the early days of the municipality. It is true that this check upon the expenditure of money has been preserved in the legislation concerning the city of Detroit. It is doubtless, however, competent for the legislature to provide that certain expenditures may be made upon approval of the common council, and it is competent also for them to abolish entirely the board of estimates, which has come now to represent the citizens' meeting."

The controller was directed to sell the bonds.

In *Tillotson* v. *City of Saginaw*, 94 Mich. 240 (54 N. W. 162), an act of the legislature authorizing the common council of Saginaw to issue bonds was construed by the court, and it did not therein seem to be questioned that the legislature might confer this right upon the common council without requiring the electors to pass upon the question. In *Common Council of Muskegon* v. *Gow*, 94 Mich. 453 (54 N. W. 170), the only question involved was whether the common council could authorize the issuance of bonds within certain limitations without a vote of the electors, and it was held it could do so. We understand that the charters in most cities and villages in the State contain like powers.

The remaining question is, Can the legislature confer

the powers attempted to be given by the act upon a township board already in existence, and which was not elected in the expectation that it might exercise any such powers? Some light was thrown upon this question in *Campau* v. *Highway Commissioner*, 132 Mich. 365 (93 N. W. 879), and *Campau* v. *Township Board*, Id. In that case certain powers over the highways theretofore exercised by the highway commissioner were withdrawn from him, and conferred upon the existing township board. Justice MONTGOMERY, speaking for the court, said:

"One question is made in the *certiorari* case which is not presented by the chancery record, but which is important to both cases, viz., whether the law is unconstitutional. It is contended that it is, and for the reason that it withdraws from the highway commissioner his functions, and that, as he is a constitutional officer, this cannot be done. Without expressing any view as to the validity of this act under the Constitution as it stood prior to the amendment of 1899 (section 49, art. 4), we think that section is a sufficient and complete answer to the plaintiff's contention. It provides that the legislature may provide for the laying out, construction, improvement, and maintenance of highways, bridges, and culverts by counties and townships, and may authorize counties to take charge of any highways within their limits for such purposes, and may modify, change, or abolish the powers and duties of township commissioners and overseers of highways. Language could not well be more plain, and we think it cannot be said that this constitutional amendment was intended exclusively to provide for a county road system. This may have been the prime object, but it in terms confers upon the legislature authority to provide for the laying out and maintenance of highways by townships as well as counties, and gives the broadest power to modify or abolish the powers and duties of township commissioners and overseers of highways."

The case is not wholly in point, because the question of whether the money should be raised or not was submitted to the electors at a township meeting, and also because the precise question involved here was not raised there.

As we have already stated, the township board is a local

board, elected by the electors.   It ordinarily represents the township.   Its membership is made up of men whose duties are the most important of those discharged by any. township officer, presumably calling for the highest order of intelligence and probity of any of the township officers. ' The new duties conferred by the act are germane to those heretofore exercised by the township board, and we think it was competent to confer upon them these new duties.

Judgment is affirmed.

The other Justices concurred. ·