McDONALD v. TOWNSHIP OF SPRINGWELLS.

1. STATUTES — SUBJECTS AND TITLES — SCOPE OF TITLE — SUFFICIENCY.

A title disclosing a purpose to authorize a township board to borrow money to improve a certain street is not broad enough to embrace a provision in the act that the contracts to be let and the fund to be disbursed shall be under the control, not of the regularly elected township officers, but of a new board, created by the act itself, three members of which are to be appointed by the township board.

2. SAME — CONSTITUTIONAL LAW — PARTIAL INVALIDITY OF STATUTE.

Where the provision in a statute not germane to the title of the act constitutes its only material change from the preexisting law, the court cannot say that the act would have received legislative sanction with the invalid provision eliminated and give effect to the act accordingly.

3. EQUITY—JURISDICTION—SETTING ASIDE REFERENDUM.

Whether equity has jurisdiction to set aside the result of a referendum to determine whether a township shall issue its bonds for a specified purpose by reason of corrupt practices indulged by the friends of the project, quære.

Appeal from Wayne; Hosmer, Donovan, Brooke, and Murphy, JJ. Submitted January 20, 1908. (Docket No. 100.) Decided March 31, 1908.

Bill by John C. McDonald and others to enjoin the township of Springwells and its officers from selling, transferring, or otherwise disposing of certain bonds. From a decree for complainants, defendants appeal. Affirmed.

*Chamberlain, May, Denby & Webster* (*Charles D. Joslyn*, of counsel ), for complainants.

*Richard I. Lawson*, for defendants.

The electors of the township of Springwells, in the county of Wayne, at an election held April 1, 1907, by a vote of 152 to 122, voted to bond the township for $60,000 to be used to pave a road.   The circuit court, in chancery, for Wayne county, on the complaint of a number of tax-paying electors of the township, by a decree made October 24, 1907, enjoined the township and its officers from selling, transferring, or otherwise disposing of the bonds and from taking any steps or proceedings under the enabling act (Act No. 411, Local Acts 1907), entitled:

"An act to authorize the township board of the township of Springwells, in the county of Wayne, to issue the bonds of said township to an amount not exceeding sixty thousand dollars, for the purpose of paving Michigan avenue in said township from the easterly limits thereof to the Pere Marquette railroad, and to levy taxes sufficient to provide for the payment thereof with interest thereon."

The four circuit judges who heard the case were of opinion that the act in question was unconstitutional and void because the provisions of section 4 of the act, if carried into effect, invaded the right of local self-government.   That section is:

"In case said bond issue is authorized by the electors of said township, the said township board shall immediately thereafter appoint three freeholders of said township, each of whom shall have equal powers with each of the members of the said township board in expending the money derived from the sale of the said bonds for the said improvement, and a majority of the said township board and of the said three freeholders are authorized and empowered to let contracts for the said paving or improvement or do whatever may be necessary to carry into effect the object of this act; and the funds received from the sale of said bonds shall be under the control of and subject to the disposition of the said township board and the said freeholders thus appointed, for the purpose of improving Michigan avenue in the manner in this act contemplated."

They were also of opinion that the title of the act was not broad enough to embrace the objects of the act, with

the provisions of section 4 included, and that, if that section was eliminated, it is improbable that the act would have received legislative assent.

The judges were agreed, also, that corrupt practices, affecting the result of the referendum, were indulged in by friends of the bonding proposition on election day. While condemning these practices, three of the judges expressed no opinion concerning the legal effect of them; one of them was of opinion that a court of equity had power, the exercise of which is warranted in this case, to declare the election void.

OSTRANDER, J. (*after stating the facts*). The act, in my opinion, embraces an object not expressed in its title. There may be ground for differences of opinion upon the point that the provision for a new board, created by the act, to make contracts and to disburse the fund, is within the general purpose of the act. There can be no differences of opinion upon the point that the title to the act does not indicate, or intimate, that the contracts to be let and the fund to be disbursed shall be under the control, not of the regularly elected township officers, but of a new board, created by the act itself, three members of which are appointed by the township board. Some reference to existing legislation will aid us. In 1903 (Act No. 231, Pub. Acts 1903), the legislature empowered townships, upon conditions set out in the act, to borrow money to improve highways and to issue township bonds. The commissioner of highways was, by the act, given charge and supervision, under the direction of the township board, of the improvements proposed to be made. This legislation was amended in 1905 (Act No. 124, Pub. Acts 1905), but in a manner not here important. Under either act, the commissioner of highways issued the orders upon which the moneys provided to pay for the improvement were expended. Under the act of 1903, the orders were required to be countersigned by the township clerk and the supervisor, and, under the act of 1905,

by the township clerk. Some of the conditions imposed were that two-thirds of the qualified electors voting should favor the issuing of bonds; that they should run for a period not exceeding 25 years, at interest not exceeding five per cent. per annum; that the amount of bonds should not exceed five per cent. of the assessed valuation of the township; that the improvements should be graveling, macadamizing, building stone roads, "or in any other way in the discretion of the township board." The act in question requires the project to be approved by a majority of the qualified electors, defines the limits of the improvement, limits the rate of interest to be paid to four per cent., payable semi-annually, and fixes the maturity of the bonds at not more than 30 years. Assuming, as we must, there were reasons for these variations from the general law, and assuming (*Campau* v. *Highway Com'r of Grosse Pointe*, 132 Mich. 365) that the power of the legislature to modify, change, or abolish the powers and duties of township.commissioners and overseers of highways is unlimited, it remains that under the general law referred to there were local officers, duly elected by the people of the municipality, who would, in the absence of express provisions to the contrary, let the contracts for the designated improvement and responsibly superintend the disbursement of the fund. It was said by this court in *People* v. *Mahaney*, 13 Mich. 481, that the design of the constitutional provision (article 4, § 20) was twofold, one purpose being to prevent the insertion of clauses in a bill of which the title gave no intimation.

"As the legislature may make the title to an act as restrictive as they please, it is obvious that they may sometimes so frame it as to preclude many matters being included in the act which might with entire propriety have been embraced in one enactment with the matters indicated by the title, but which must now be excluded because the title has been made unnecessarily restrictive. The courts cannot enlarge the scope of the title; they are vested with no dispensing power; the constitution has made the title the conclusive index to the legislative in-

tent as to what shall have operation; it is no answer to say that the title might have been made more comprehensive, if in fact the legislature have not seen fit to make it so." Cooley on Constitutional Limitations (7th Ed.), p. 212.

It is sometimes a difficult, always a delicate, task to determine that the constitutional restriction has been disregarded. Without considering whether the legislation is invalid because it is an invasion of the right of the community to control its internal affairs, I am impressed that no one reading the act by its title, or informed of the purpose thereof expressed in the title, would suppose that the act created a new, and to the law, and to history, a nondescript board to superintend a purely local improvement and to disburse moneys raised upon the faith and credit of the local community. Whether or not it was strictly within the legislative power to do so, the significant fact is that the legislature has, in the body of the act, denied the community the usual control of local affairs. Counsel for appellants, in his argument, assumes that the title of the act is not broad enough to include the object expressed in section 4, but contends that with that section eliminated the act is effectual and should be held to be valid. The question is, whether we can say that the legislature would not have passed the act with this section omitted. It seems to me that in this connection we are obliged to consider, in view of existing general law, why the legislature should have passed this act at all if not for the purpose expressed in section 4. In all other respects, the variations from the general law, so far as the record makes them apparent, are slight. Imagination would be little exercised in arriving at the conclusion that the main purpose of the statute was the one expressed in section 4; a purpose which the title, I assume by inadvertence, does not disclose.

The conclusion is that the act must be held to be invalid, and the decree of the court below affirmed. An opinion concerning the legal effect of the practices indulged in by

certain friends of the project before and on election day, and concerning the jurisdiction of a court of equity to set aside the result of a referendum obtained by corrupt practices is not required. The record before us contains ample proof that petty bribery was resorted to for the purpose of influencing electors. It must be plain to every one that the value of the referendum in proceedings to impose community indebtedness is destroyed if the apparent result is a fraudulent one.

GRANT, C. J., and MONTGOMERY, HOOKER, and CARPENTER, JJ., concurred.