*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BETH BAUER,

FOR PUBLICATION
April 16, 2020

Petitioner-Appellant,

v

No. 344050
Saginaw Circuit Court
LC No. 17-032353-AA

SAGINAW COUNTY and SAGINAW COUNTY
PROSECUTOR,

Respondents-Appellees.

Before: O'BRIEN, P.J., and JANSEN and GLEICHER, JJ.

GLEICHER, J. (*concurring in part and dissenting in part*).

This case presents a clash of two statutes.

The prosecutor's appointment/tenure statute, MCL 49.35, enacted in 1925, vests an elected prosecutor with robust powers to make employment decisions. The Political Freedom Act, MCL 15.401 *et seq.*, enacted in 1976, broadly protects the right of public-sector employees to engage in political activity without fear of retribution. The majority finds that the statutes are fundamentally incompatible and holds that the Political Freedom Act must yield. In my view the two statutes may be reconciled in a manner that gives force and effect to both.

I

The material facts are simple and straightforward. In 1989, Saginaw County's then prosecuting attorney, Michael Thomas, hired plaintiff Beth Bauer as his legal office manager. Bauer and other clerical employees were members of the United Auto Workers. The terms and conditions of their employment were covered by a collective bargaining agreement. The 2008 CBA provided that Bauer's was a just-cause employment position for as long as she held it.

In 2012, John McColgan defeated Thomas and became the new prosecutor for Saginaw County. McColgan fired Bauer. The notice of her discharge stated: " '[s]ervices no longer needed. Are an at-will employee under state statute.' " *Bauer v Saginaw Co*, 641 Fed Appx 510, 513 (CA 6, 2016).

Bauer brought an action in the United States District Court raising federal and state-law claims; that case did not survive summary judgment. See *id*. She also filed an administrative complaint in the Michigan Administrative Hearing System asserting that she was discharged in violation of the Political Freedom Act, MCL 15.04 *et seq*. Defendants McColgan and Saginaw County responded that McColgan had the authority to fire Bauer pursuant to the prosecutor's appointment/tenure statute, MCL 49.35. An administrative law judge found that Bauer's was a just-cause position and that "she was discharged because of her political activities on behalf of former Prosecuting Attorney Thomas." The discharge violated the Political Freedom Act, the ALJ ruled. The prosecutor's appointment/tenure statute did not apply, the ALJ determined, because Bauer was hired by Saginaw County and not McColgan.

Defendants sought review in the circuit court, which reversed the ALJ. We granted leave to appeal. *Bauer v Saginaw Co*, unpublished order of the Court of Appeals, entered December 14, 2018 (Docket No. 344050).

II

The Political Freedom Act protects the right of public employees to engage in political activities outside the workplace. It provides that "an employee of a political subdivision of the state may . . . [e]ngage in . . . political activities on behalf of a candidate or issue in connection with partisan or nonpartisan elections." MCL 15.403(1)(d). The act also includes a remedy provision, as follows:

> (1) An employee of a political subdivision of this state whose rights under this act are violated or who is subjected to any of the actions prohibited by section 5 may make a complaint to that effect with the department of labor. The department shall hold a hearing to determine whether a violation has occurred. If a violation has occurred, the department shall so state on the record and may order any of the following:
>
> > (a) Issuance of back pay.
> >
> > (b) Reinstatement as an employee.
> >
> > (c) Attorney fees.
> >
> > (d) Reinstatement of all work-related benefits, rights or privileges which,
> but for the violation by the employer, would have been accrued by the employee.
> [MCL 15.406.]

The prosecutor's appointment/tenure statute states that "assistant prosecuting attorneys and other employees appointed by said prosecuting attorney . . . shall hold office during the pleasure of the prosecuting attorney." MCL 49.35. The majority holds that Bauer is an employee subject to the prosecutor's appointment/tenure statute because she falls within the scope of MCL 49.31:

> In each county of the state of Michigan, the board of supervisors of such counties, at their regular annual meeting, may, by resolution authorize the appointment by the prosecuting attorney of said county of as many assistant

> prosecuting attorneys as said board of supervisors shall deem necessary, and shall in addition authorize the appointment by said prosecuting attorney, of such investigating officers, clerks, stenographers and other clerical employees as said board of supervisors shall deem necessary.

I concur with the majority's conclusion that Bauer was a coemployee of the prosecutor and the county; this conclusion is compelled by *Council No 11, American Federation of State, Co & Muni Employees (AFSCME) v Mich Civil Serv Comm*, 408 Mich 385; 292 NW2d 442 (1980).

The majority further holds that the Political Freedom Act does not restrict the prosecutor's statutory authority to fire at will. I cannot agree with this proposition. In my view, the two statutes can and must be harmonized. Alternatively, I would hold that the more recently enacted of the two—the Political Freedom Act—controls.

A

The controversy before us is narrower than the majority opinion apprehends, and as a starting point the question presented must be correctly identified. The majority declares that "the Legislature specifically endowed the prosecutor with the authority to appoint . . .and the power to remove appointed employees at will . . . ." True enough. The majority then homes in on the prosecutor's *appointment* power, proclaiming that the Political Freedom Act "has no language applicable to the prosecutor's appointment authority." Bauer does not contest the prosecutor's power to hire whomever the prosecutor selects. Rather, Bauer asserts that the Political Freedom Act circumscribes the prosecutor's power to *fire*. The prosecutor's hiring powers are not at issue here, and by raising them the majority muddles the legal analysis. McColgan did not *hire* Bauer, he *fired* her. The question is whether that act was wrongful.

The majority addresses this issue only superficially, declaring that "[i]n reading the two statutes together, there is no provision in the Political Freedom Act that restricts the prosecutor's statutory authority under the prosecutors' appointment/tenure statute." This is an obvious and accurate observation, but neither relevant nor helpful. Statutes often appear to conflict precisely *because* the newer fails to reference the older, and yet both seem to cover precisely the same ground. See, e.g., *Apsey v Mem Hosp*, 477 Mich 120, 124; 730 NW2d 695 (2007) (holding in a case that involved two statutes addressing the notarization of out-of-state affidavits—one passed in 1963 and the other in 2003—that the Legislature intended for the newer statute to serve as "an alternative" for authenticating out-of-state affidavits).

The majority's simplistic approach would reduce the construction of conflicting statutory texts to judicial selection of the statute that *should* control, based solely on the judge's assessment of which expresses better policy. And that is precisely what the majority does here, concluding that enforcement of the Political Freedom Act would "lead to the 'absurd result that every newly elected official would be bound to reappoint his predecessor[']s appointees, if they engaged in political activity in support of his predecessor.' " Again, this case does not involve "appointment;" Bauer's claim rests entirely on her termination. More to the point, I find nothing "absurd" in the proposition that prosecuting attorneys, like every other employer, must follow the law.

Properly framed, Bauer's case asks us to decide whether *despite* the powers granted by the prosecutors' appointment/tenure statute, defendants' decision to fire Bauer was nonetheless wrongful because it contravened the Political Freedom Act. A long line of cases governing statutory interpretation guides us to the answer: it was.

The majority never engages with this line of caselaw. Instead, it sidesteps the task of statutory reconciliation by asserting that regardless of whether Bauer was terminated because of her political activity, she lacks any "private cause of action for enforcement of the Act." But Bauer did not file a case implicating a "private cause of action;" she brought an administrative claim under MCL 15.406. That statute specifically permits aggrieved public employees "whose rights are violated" to complain to the Department of Labor, MCL 15.406(1), which is precisely what Bauer did. The same statutory section vests the department with the authority to "hold a hearing to determine whether a violation has occurred." *Id.* If the department finds a violation, it is empowered to award back pay, reinstatement, and attorney fees—exactly what occurred here.[1] Once again, the majority took a detour leading to a dead end.

Which brings us to the majority's resolution of what it describes as "the interplay between the prosecutors' appointment/tenure statute and the Political Freedom Act." Aside from pointing out that no language in the Political Freedom Act applies to prosecutors, the majority offers nothing other than that enforcement of the Political Freedom Act would be "absurd." Yet there *is* a clear pathway allowing for the accommodation of both statutes. In my view, the prosecutors' appointment/tenure statute holds firm, but must be qualified by a prohibition on terminating just-cause employees based solely on their protected political activities.

B

My analysis governing the construction of the "interplay" between two apparently conflicting statutes rests on well-established interpretive principles. "[W]hen two statutes are capable of coexistence, it is the duty of the courts to regard each as effective." *Radzanower v Touche Ross & Co*, 426 US 148, 155; 96 S Ct 1989; 48 L Ed 2d 540 (1976) (cleaned up).[2] Our

---

[1] Because defendants did not challenge the *form* of Bauer's administrative action, the parties did not brief this issue. I suggest that although Bauer did not pursue one, a private cause of action does exist. "It is well settled . . . that an employer is not free to discharge an employee at will when the reason for the discharge contravenes public policy." *McNeil v Charlevoix Co*, 484 Mich 69, 79; 772 NW2d 18 (2009). In *Suchodolski v Mich Consol Gas Co*, 412 Mich 692, 695; 316 NW2d 710 (1982), our Supreme Court pointed out that "some grounds for discharging an employee are so contrary to public policy as to be actionable. Most often these proscriptions are found in explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty." In my view, a violation of the Political Freedom Act comfortably fits within this realm.

[2] This opinion uses the new parenthetical "cleaned up" to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

Supreme Court adheres to the same axiom. "It is a fundamental rule of statutory construction that apparently conflicting statutes should be construed, if possible, to give each full force and effect." *In re Midland Publishing Co, Inc*, 420 Mich 148, 163; 362 NW2d 580 (1984) (cleaned up).[3] Recently our Supreme Court echoed the same sentiment, encouraging courts to "construe statutes, claimed to be in conflict, harmoniously," and to avoid a construction that impliedly eliminates the effect of one statute in favor of another. *Int'l Business Machines Corp v Dep't of Treasury*, 496 Mich 642, 651-652; 852 NW2d 865 (2014).

Our state's jurisprudence offers many examples of this approach. In *Rathbun v State of Michigan,* 284 Mich 521; 280 NW 35 (1938), the dueling statutes involved gas, oil and mineral rights. The plaintiff claimed that she had obtained absolute title in fee to land deeded to her by her homesteader father-in-law, and that her absolute title included the mineral rights. *Id.* at 529-530. In support of this argument, she invoked an 1893 tax statute which she contended "provided for the conveyance by the State of an absolute title in fee to the homesteader . . . without any severance of the mineral rights[.]" *Id.* at 530. The State insisted that when it provided the homesteader with his certificate and deed, it had reserved the mineral rights pursuant to a 1909 statute empowering the State "to sever the absolute fee in the surface rights from the absolute fee in the mineral rights[.]". *Id.* at. 536. The Supreme Court observed that the newer statute was passed to protect and conserve the state's natural resources, and was "designed to correct existing evils, to remedy a deplorable situation which had grown out of private exploitation of the natural resources of the State." *Id.* at 536-537.

The Supreme Court rejected the plaintiff's argument that the two statutes hopelessly conflicted, despite that the 1893 tax statute clearly stated that a homesteader deed "shall convey an absolute title to the lands sold." *Id.* at 533. "The statutory provision that the State convey to a homesteader an absolute title in fee did not require that the State convey . . . an absolute title in fee to the mineral rights, as well as to the surface rights of the lands in question," the Supreme Court explained. *Id.* at 536. Rather, the Court construed the two statutes together seeking a way of harmonizing them. It interpreted the subsequently enacted statute as indicating "a growth of general public policy with regard to such disposition and conservation of these resources of the State," and did not "infringe" on any other statute. *Id.* at 545-546. The Court reasoned:

> It is a well-established rule that in the construction of a particular statute, or in the interpretation of its provisions, all statutes relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law, although they were enacted at different times, and contain no reference to one another. The endeavor should be made, by tracing the history of legislation on the subject, to ascertain the uniform and consistent purpose of the legislature, or to discover how the policy of the legislature with reference to the

---

[3] *In re Midland Publishing Co*, 420 Mich 148, 163; 362 NW2d 580 (1984), further provides: "It is also well established that a later-enacted specific statute operates as an exception or a qualification to a more general prior statute covering the same subject matter and that, if there is an irreconcilable conflict between two statutes, the later-enacted one will control." This approach provides an alternate ground for reversing the circuit court.

subject matter has been changed or modified from time to time. In other words, in determining the meaning of a particular statute, resort may be had to the established policy of the legislature as disclosed by a general course of legislation. With this purpose in view therefore it is proper to consider, not only acts passed at the same session of legislature, but also acts passed at prior and subsequent sessions. [*Id*. at 543-544 (cleaned up).]

Our Supreme Court recently reembraced the *Rathbun* approach in *Int'l Business Machines Corp*, 496 Mich at 652-653.[4] See also *Wayne Co Prosecutor v Dep't of Corrections*, 451 Mich 569, 577; 548 NW2d 900 (1996) ("The guiding principle is, to be sure, that we are obliged to determine the will of the Legislature; but where the intent of the Legislature is claimed to be unclear, it is our duty to proceed on the assumption that the Legislature desired both statutes to continue in effect unless it manifestly appears that such a view is not reasonably plausible."). Other cases featuring this reconciliation approach include *Apsey*, 477 Mich 120, and *Stenzel v Best Buy Co*, 503 Mich 199; 931 NW2d 554 (2019) (harmonizing a statute and a court rule).

Similar to *Rathbun*, the two apparently conflicting statutes at issue in this case were passed at different times and were intended to address different concerns. We must not lose sight of the fact that the newer statute, here and in *Rathbun*, was "designed to correct existing evils." The legislative purpose clearly expressed in the Political Freedom Act is to safeguard the rights of people like Beth Bauer to engage in political activity without fear or losing their jobs. And the Political Freedom Act is but one of several acts protecting the civil rights of public-sector employees that postdate the enactment of the prosecutors' appointment/tenure statute.

In 1976, our Legislature passed two civil rights statutes applicable to the employees of political subdivisions, including Bauer: the Civil Rights Act (CRA), MCL 37.2101 *et seq*., and the Handicappers' Civil Rights Act (amended by 1998 PA 20 and renamed the Persons with Disabilities Civil Rights Act (PWDCRA)), MCL 37.1101 *et seq*. In 1980, the Legislature enacted the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*. All three of these statutes extend protection against wrongful termination to employees of political subdivisions of the state. See *In re Bradley Estate*, 494 Mich 367, 393 n 60; 835 NW2d 545 (2013) (observing that the PWDCRA defines " 'employer' to expressly include state actors" in MCL 37.1103(g)); *Anzaldua v Band*, 457 Mich 530, 533-534; 578 NW2d 306 (1998) (explaining that "the state and its political subdivisions are to be considered employers" for the purposes of the WPA); *Manning v Hazel Park*, 202 Mich App 685, 699; 509 NW2d 874 (1993) ("Concerning the sex and age discrimination claims, defendants do not have a governmental immunity defense because the [CRA] specifically includes state and political subdivisions and their agents and employers covered by the act.").

Each of these three acts permits employees to sue if discharged from employment on a protected ground. The CRA prohibits an employer from "discharg[ing]" an employee "because of religion, race, color, national origin, age, sex, height, weight, or marital status." MCL 37.2202(1)(a). The PWDCRA prohibits an employer from "[d]ischarg[ing] . . . an individual . . .

---

[4] The dissent in *Int'l Business Machines Corp* also cited *Rathbun* approvingly, but maintained that the two tax statutes under consideration could not be reconciled. *Int'l Business Machines Corp v Dep't of Treasury*, 496 Mich 642, 672; 852 NW2d 865 (2014) (MCCORMACK, J., dissenting).

because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position." MCL 37.1202(1)(b). The WPA provides that "[a]n employer shall not discharge . . . an employee . . . because the employee . . . reports . . . a violation or a suspected violation of a law or regulation . . . ." MCL 15.362.

The Political Freedom Act extends similar protections by prohibiting employers from penalizing employees who exercise their right to participate in the political process. It qualifies as reform legislation intended to remedy a problem the Legislature evidently perceived. See *Council No 11*, 408 Mich 385 (providing a more in-depth discussion of the act). I offer the civil rights statutes as comparators to the Political Freedom Act because they help to demonstrate that the two statutes at issue in this case can be reconciled in a manner that honors both.

The Supreme Court's holding in *Mack v Detroit*, 467 Mich 186; 649 NW2d 47 (2002), is also instructive. The plaintiff in *Mack* brought a sexual orientation discrimination case against the city of Detroit, invoking the declaration of rights set forth in the City Charter. *Id*. at 189. The Supreme Court held that the governmental tort liability act (GTLA), MCL 691.1407 *et seq*., precluded her claim. *Mack*, 467 Mich at 189-190. The Supreme Court pointed out, however, that "there are other areas outside the GTLA where the Legislature has allowed specific actions against the government to stand, such as the [CRA]." *Id*. at 195. The CRA, however, did not encompass the plaintiff's sexual orientation discrimination claim. *Id*. at 196. In enacting the Political Freedom Act, the Legislature also "allowed specific actions against the government" to go forward, as the act defines the individuals covered by it to include "an employee of a political subdivision of the state who is not an elected official." MCL 15.401. The act specifically permits public employees to engage in political activity and empowers them to bring a claim for any infringement of that right. By defining those covered so capaciously, the Legislature obviously intended that public-sector employees in the executive branch would receive the law's benefit.

Despite that the prosecutors' appointment/tenure statute affords a county prosecutor seemingly unbridled authority to fire an employee covered by the statute, it is beyond comprehension that a prosecutor could fire an employee based on race, sex, disability status, or because the employee engaged in protected whistleblower activity. Although the prosecutor's powers are broad, they do not extend to knowingly and deliberately violating these other laws. Similarly, the prosecutor's powers should not be construed so broadly as to excuse a violation of the Political Freedom Act. Had the Legislature intended to immunize the prosecutor (or any other public official) from the reach of the civil rights statutes, the whistleblower act, or the Political Freedom Act, it surely could have done so.

Interpreting the prosecutors' appointment/tenure statute in a manner that preserves its essence permits the survival of both statutes and comports with our duty to reconcile rather than displace. In my view, the Political Freedom Act merely tempers the reach of the prosecutor's discretionary authority. Analogously, the Supreme Court reached the same conclusion in *Council No 11*, 408 Mich 385, holding that when it came to regulating employees' political activity, the power of the Civil Service Commission to make rules and regulations governing the civil service had to give way to the act.

But if the majority is correct and the statutes are truly irreconcilable, the majority has chosen the wrong one to enforce. Where two laws conflict and cannot be harmonized, the general

rule is that the last one enacted controls.  *Metro Life Ins Co v Stoll*, 276 Mich 637, 641; 268 NW 763 (1936).  See also *Jackson v Mich Corrections Comm*, 313 Mich 352, 357; 21 NW2d 159 (1946) (cleaned up) ("The rule as stated in the foregoing and other decisions involving the question recognizes that if the provisions of a later statute are so at variance with those of an earlier act, or a part thereof, that both cannot be given effect then the later enactment control and there is a repeal by implication.").

C

The prosecutors' appointment/tenure statute indisputably afforded McColgan with the authority to hire whomever he wanted as his legal office manager.  But the Political Freedom Act prohibited him from terminating Bauer's employment in his office on the sole ground that she had worked on behalf of his competitor for the office.  It bears emphasis that Bauer was a just-cause employee.  Had McColgan fired her for a cause unrelated to her political activities (or a protected characteristic), his decision to do so would be beyond question.  And in most prosecutor's offices, it is likely that the employees are at-will (as was everyone in McColgan's office other than Bauer), terminable for no stated reason at all.

I would reverse the circuit court and remand to the Department of Labor for continuation of the administrative proceedings.


/s/ Elizabeth L. Gleicher